YARRUT, Judge.
Plaintiff appeals from a judgment dismissing his suit for workmen’s compensation, which claim is based on the contention he suffered an inguinal hernia while performing his hard labor duties for Defendant on February 1, 1960. There is no question of his employment, the nature thereof, viz., driving a truck and removing and replacing motor vehicle tires, weighing from 20 to 100 pounds each, which he loaded and unloaded from the truck. The only question is whether he actually sustained and is still suffering from the injury he claims, an inguinal hernia.
Plaintiff was paid compensation from February 2 to March 14, 1960, when it was discontinued by Defendant upon medical advice that Plaintiff was fully recovered from any injury sustained and able to return to work.
This matter must be decided upon the medical testimony. The lay testimony is pertinent, however, with respect to Plaintiff’s creditability.
Regarding the lay testimony, Plaintiff relies mainly on seven witnesses, friends who live in the general vicinity of his home, whose testimony is devoted to prove that Plaintiff, although having ridden frequently on trucks and often visiting a neighborhood barroom, after the alleged accident had not worked from that date until the time of the trial (14 months later). It is passing *799 strange that these witnessses kept Plaintiff under constant surveillance for fourteen months, which they would have had to do in order to so testify.
Plaintiff testified that the accident occurred on Monday morning, February 1, 1960, and that he immediately reported it by telephone to his supervisor, and that he performed no work whatsoever following the reporting of the accident. Pie persisted in this position in the face of the testimony of his supervisor, and the head of Defendant’s personnel office, both of whom testified Plaintiff came to them on Monday, February 1, complaining that, during the previous week (the personnel officer giving the date positively as Wednesday, January 27), he had sustained an injury consisting of a pain in the groin while lifting a tire. That the accident occurred on January 27, and not February 1, is further corroborated by one of Plaintiff’s doctors, who testified that January 27 was the date given to her by Plaintiff; and again corroborated by another doctor who examined Plaintiff.
Defendant produced records showing that Plaintiff worked eight hours on the date of the accident (January 27), and on the Thursday and Friday following, and five hours extra time on Saturday, January 30, all this notwithstanding Defendant’s insistence that he could not work after sustaining the alleged injury.
We shall now review the medical testimony which must be decisive of the case; two physicians on behalf of Plaintiff, and four for Defendant.
For Plaintiff: A general practitioner and surgeon examined Plaintiff on April 21, 1961, at Charity Hospital in New Orleans, more that 14 months after the alleged injury. He testified Plaintiff had a small inguinal hernia. Another general practitioner at the time, previously specializing in otology, examined him on February 3, 1960, and thought Plaintiff had an inguinal hernia, but referred him to another doctor. On February 10, 1960, this same general practitioner found Plaintiff suffering from acute epididymitis.
For Defendant: A general practitioner, who examined Plaintiff for Plaintiff’s then attorneys, could find no hernia on February 18, 1961.
A urologist who examined Plaintiff on February 1, 1960 (5 days after the accident on January 27, the date given him by Plaintiff) diagnosed Plaintiff’s condition as “a mild urinary tract infection and left epidi-dymitis, with a moderate amount of left funiculitis, inflammation of the spermatic cord,” and found no evidence of hernia. When asked whether the lifting of a heavy weight might produce epididymitis, replied' that epididymitis does not originate from trauma and cannot be produced unless infection is already present. He requested that Plaintiff return for further treatment,, but he never returned.
Another doctor, a specialist in industrial' medicine, with a long experience with hernias, examined Plaintiff on November 10, 1960, and testified his examination revealed no evidence of any residual of injury or disease; thought Plaintiff was able to do-any character of work; examined him carefully for any symptom of inguinal weakness or hernia, and found none; and found no evidence of epididymitis, the epididymis- and spermatis both completely normal.
Another urologist examined Plaintiff on October 20, 1960, at the request of Plaintiff’s counsel, and testified for Defendant that his examination was entirely negative,, but because of the history of having had swelling in the testicle and epididymitis on the left, he specifically checked that area and found all normal, and concluded there was no evidence of injury or of disease of the genito-urinary' tract, and could find neither hernia nor inguinal hernia.
In a compensation suit plaintiff has the burden of proof, as in other civil cases, to establish his claim by preponderance of evidence. Williams v. New Amsterdam Casualty Company, La.App., 121 So.2d 760; *800 Roberts v. M. S. Carroll Co., La.App., 68 So.2d 689.
Testimony of specialist in particular field, to which claimant’s injuries are related, is entitled to greater weight than opinion of general practitioner. Walker v. Monroe, La.App., 62 So.2d 676; Price v. T. L. James & Co., La.App., 53 So.2d 182; Rider v. R. P. Farnsworth Co., La.App., 61 So.2d 204; Murphy v. American General Insurance Company, La.App., 122 So.2d 100.
Testimony of physician first examining or treating claimant is usually entitled to greater weight than the opinion of a doctor who examines him later. Richmond v. New Amsterdam Casualty Company, 85 So.2d 717; Williams v. New Amsterdam Casualty Co., supra.
For the reasons assigned, the judgment of the trial court is affirmed; each party to pay his or its own costs.
Affirmed.