ELLIS, Judge.
Plaintiff in seeking compensation for alleged total permanent disability as the result of an accident on July 14, 1952, while in the employ of the defendant. By stipulation in the lower court on the day ,of trial, the sole issue before that court and on appeal before this court is a question of fact, namely, the nature, extent and duration of the plaintiff’s disability if any.
Plaintiff has appealed from a judgment of the District Court dismissing his case at his cost.
The plaintiff was employed as a common laborer and at the time of the accident was carrying some hot tar which spilled on his right foot. It is shown that he suffered second-degree burns which left some small scars on the top of his foot. He was taken to Dr. J. William Crookshank who treated him until August 18, 1952, at which time he discharged him and instructed him to return to work on August 25, 1952. Plaintiff was- paid compensation in the amount of $102 and wages between July 14, and July 23, 1952, and it is admitted that these amounts constituted all the compensation and wages due to plaintiff between the date of the injury and August 25, 1952.
The plaintiff produced Dr. Frank Marek, radiologist of Lake Charles, who- testified regarding X-ray pictures made of the plaintiff’s foot and ankle, that they showed a cystic area in the ankle which he stated was •so close to the foot that it could not be separated and which he referred to as sub-pereosteal cyst, and also -an arthritic- spur on the torsal scaphoid which is a part of the bone to the foot. According to Dr. Marek, this arthritic spur is about in the area of which the plaintiff complained. It appears from the medical testimony that a cyst of the nature which Dr. Marek testified existed in the plaintiff’s foot is some *137 times inflammatory and in the case of a burn which causes a break in the skin they are caused by bacteria that enters. The plaintiff did not complain to this doctor of any pain immediately over the • area where the doctor says the cyst was located; While this doctor was reluctant to give any opinion on a clinical problem, the strongest testimony that he could and would give as to whether the cyst he described was caused or aggravated by the injury was that such was possible. He was of the same limited opinion with regard to the arthritic spur. On. cross examination Dr. Marek definitely stated that he could not tell how long the alleged cyst had been in the plaintiff’s foot and in answer to a question by the court for an explanation as to how the tar bum bn the foot would cause the spur, he stated that he “did not tie any relationship as a causal effect there,” in other words, the doctor by his testimony eliminated-from consideration as far as he was concerned the arthritic spur as having any connection with any disability the plaintiff might or might not have suffered as. a result of the burn.
Dr. George Schneider testified on behalf of the plaintiff that on Nov. 5, 1952 he examined the plaintiff at the request of his attorney and that examination failed to reveal any evidence of muscular atrophy but there seemed to be a decrease in the tone of the- right quadraceps muscle. He also noted the small scar on his right foot as well as a moderate amount of tenderness over the anterior capsular area of the right ankle. This doctor had X-rays made of plaintiff’s right ankle, and foot, which failed to reveal anything of significance or anything upon which he could make any definite diagnosis. He did testify that there appeared to be several soft shadows in the right ankle joint which could have raised calcification in the anterior capsule. As to any disability at the time of the examination he felt that further studies were nec-essaiy and he was the doctor who referred him to Dr. Marek for further radiological study. He did this for the purpose of ruling out or establishing whether the shadows he noted were real.' In the X-rays of Dr. Mar-ek he testified that in the region in whibh he had noted the shadows looked clear, hour-evér, he agreed with Dr. Marek as to the cyst shown by the latter’s X-rays. He also noted the arthritic spur described by Dr. Marek. This doctor made a second physical examination 'of the plaintiff on the 10th of January, 1953.'■ He' testified' that he felt plaintiff “had a possibility of a small neu-roma in the residual scar and that he had a certain amount of weakness of the lower right extremity.” A final opinion was rendered by this doctor on the 2nd of February, 1953 to the effect that the plaintiff would eventually be able to resume full gainful employment as he was doing prior to the injury in view of his findings but that he possibly would have to go through a rehabilitation period involving continual activity of the' lower right extremity, probably for a period of two to four weeks. His recovery would depend on án adéquate carrying out of routine exercises to be prescribed. This doctor was 'asked if hé could give an opinion as to the relation if any between the injury ánd cystic area he described and whether it represented a' condition that could have been caused by plaintiff’s accident, ‘ and he frankly stated that it was questionable and he futhef stated, “I do not tell, however,' in view of the findings as noted on examination that there is any definite connection between this and the patient’s disability.”' This doctor was of the opinion that his disability to do hard manual labor at the time of the trial was due to a weakness in the right lower extremity from non-use. ' '
Aside from the testimony of the plaintiff, who described the accident and pain in his foot, and two other lay witnesses, both of whom testified that plaintiff complained of his foot hurting him, this constituted all of plaintiff’s testimony.
The defendants offered the testimony of Dr. Knapp who treated the plaintiff approximately 9 days after his accident and injury and who testified that from his examination at that time he saw nothing that *138 would cause disability of a permanent nature. It was his opinion then that plaintiff could return to work in probably two to three weeks maximum time. He was also of the opinion, after examining the X-ray plates made by Dr. Marek, that they were normal in every way. In other words, he saw no cystic area on these plates, and he was further of the opinion that a burn of this nature would not have produced or caused to develop a neuroma or cyst and his reason was that he had never seen one develop from a burn of the nature suffered by plaintiff.
Dr. George Stephenson testified that on Feb. 3, 1953 he examined the plaintiff and had X-rays made of his foot and ankle and that he found no evidence of any cyst in any part of the foot and that he found the muscles of both legs approximately the same. He therefore could see no reason why there could be any more weakness in the right leg than in the left. It was his definite opinion that as a result of a second degree burn such as the one sustained by plaintiff that it would not produce any neu-roma as it was not deep enough to catch the nerve itself. He did find by his X-rays a minimal spurring of the so-called scaphoid of the joint, which had no relation to the burn. This doctor also examined the plates made by Dr. Marek and was of the opinion that they showed nothing abnormal, specifically he saw nothing that would indicate a cyst, and this doctor was definitely of the opinion that the plaintiff as of the date of his examination and at the date of the trial was able to go back to work and do the same manual labor which he had done prior' to his injury.
Dr. William Crookshank was also called on behalf of the defendant and testified that he had treated the plaintiff on July 28, 1952 and described the second degree burn of the plaintiff's right foot and also stated that plaintiff had an excellent recovery as far as any disability was concerned, and that he had discharged him as being cured and able to return to his former work around the 25th of August, 1952.
Dr. Hugh Price, witness on behalf of the defendant, on October 6, 1952 examined the plaintiff and described the burn on the foot as being either of first or second degree and having been well healed, and it was also his opinion that the burn was not deep enough to cause a neuroma as it would not have caused any injury to any nerve. This doctor also took X-rays of plaintiff’s foot and found it to be perfectly normal, and upon being shown Dr. Marek’s X-rays found no abnormality and he positively testified that if he did have a cyst it was his opinion that it would be an impossibility for it to be referable to the injury sustained. He was of the opinion that plaintiff had no disability and was fully able to return to gainful labor. He also found no difference in the muscles of the right and left leg.
The above constitutes all the testimony offered by plaintiff and defendant in this case. In view of the fact that the medical testimony offered by the plaintiff is not of a positive nature and is thoroughly disputed by defendant’s doctors, and the latters’ testimony being positive in that plaintiff was suffering no disability and was able to return to his same duties, that of a manual laborer, the judgment of the District Court is correct and should be affirmed.