87 So.2d 165 (1956)
Calvin WILLIAMS, Plaintiff-Appellant,
v.
SOUTHERN ADVANCE BAG & PAPER COMPANY, Inc., et al., Defendants-Appellees.
No. 8460.
Court of Appeal of Louisiana, Second Circuit.
April 19, 1956.
Rehearing Denied May 21, 1956.
*166 Dhu & Lea S. Thompson, Monroe, for appellant.
Gravel, Humphries, Sheffield & Mansour, Alexandria, for appellees.
GLADNEY, Judge.
The plaintiff, Calvin Williams, has appealed from a judgment which awarded workmen's compensation payments for a period of ten weeks' disability following the occurrence of an accidental injury on October 14, 1953.
Suit was filed on February 5, 1954, against Southern Advance Bag & Paper Company, Inc. and Liberty Mutual Insurance Company, in which action plaintiff alleges he sustained a hernia while employed cutting and loading pulpwood and which injury has created a condition of total and permanent disability, entitling him to compensation under the provisions of the Louisiana Workmen's Act. Plaintiff supplemented his original petition by making Lois Babers an additional party defendant, asserting that Babers was his immediate employer and a contractor employed by the Southern Advance Bag & Paper Company, Inc. The defense posed by the several defendants is in the nature of a general denial. Exceptions of no right of action and no cause of action were filed, but must be considered as abandoned as such exceptions are not urged before this court.
The employment of plaintiff, the occurrence of an accident subject to the provisions of the Workmen's Compensation Statute, the amount of weekly compensation due, if any, are not disputed. The sole and only contention raised by the defense questions the extent and duration of plaintiff's injury. In written reasons for judgment the District Court made findings favorable to plaintiff, but was of the opinion the employee should have taken steps to correct his disability and upon his failure to do so, compensation should be discontinued.
Calvin Williams was first employed by Lois Babers about five months prior to his injury. Before commencing employment he underwent the customary physical examination by Drs. Grover C. Black and A. E. McKeithen, physicians acting on behalf of his employers. His duties consisted of cutting and loading pulpwood for which he was paid at the rate of $4.50 per cord and which remuneration averaged $40 per forty-hour week. On the date of the alleged injury he was so engaged loading pulpwood with J. W. Moore and Clinton Sanders. The three were lifting a rather large pine log to place it upon the truck when, as he testified, he felt a stinging sensation in his groin, felt dizzy and was sick at his stomach. He laid down on the ground awhile and then caught *167 the next truck and reported to Drs. Black and McKeithen at their clinic in Hodge, Louisiana. His testimony was substantially corroborated by his co-workers.
Dr. Black made a physical examination after which he concluded that plaintiff strained certain muscles in the inguinal region of the left ring, which injury he described as being "traumatic mouth size". He prescribed rest and fitted Williams with an abdominal support which he stated was merely given for the purpose of making him feel better. The doctor also prescribed mild sedation and thereafter continued to see and treat the employee on some ten occasions. Dr. Black testified he was never able to demonstrate hernia and finally called in his partner, Dr. A. E. McKeithen, who examined plaintiff three times. Both doctors found extreme tenderness but assert that there should have been a recovery within five weeks. On the last examination both of the doctors proposed to Calvin Williams that he return to them for a hernia operation for the purpose of correcting the disability. Thereafter plaintiff did not return. It was explained by the two doctors that the suggestion of an operation was only for the purpose of testing the sincerity of plaintiff's complaints as actually an operation was not indicated.
On October 28th plaintiff was examined by Dr. Thomas A. Dekle, of Jonesboro, Louisiana, upon the suggestion of an attorney whom he had consulted. Dr. Dekle was not subpoenaed by plaintiff but responded to an instanter summons after plaintiff testified that he had visited Dr. Dekle. The doctor testified he found both right and left rings normal and there was no evidence of hernia. He stated plaintiff complained of a knot but he, the doctor, found only a tightened muscle about the size of a walnut. The doctor testified further that he again examined plaintiff on December 22, 1953. Rebuttal evidence was tendered by plaintiff to the effect that plaintiff was in Shreveport at the time of the latter examination.
During May of 1954, at the instance of his counsel, Williams was examined by Dr. James E. Walsworth of Monroe, Louisiana, who testified that plaintiff sustained in the accident a definite left indirect inguinal hernia. The doctor testified the condition was not congenital and reasoned that if it were congenital there would not be any evidence of tenderness. He expressed the opinion: "Any lifting exercise or manipulation might precipitate an incarcerated or strangulated hernia", and that therefore, plaintiff was disabled to do manual labor because of the danger involved.
In June of 1954, Williams was examined by Dr. Marvin T. Green of Ruston, Louisiana, upon the solicitation of appellees. Dr. Green concluded that both rings in the inguinal region were moderately relaxed. He found no sac, no bulging into the ring, and no impulse on coughing and straining. He expressed the belief that the relaxed rings were of congenital origin. The doctor further testified that in his written report of the examination he had conceded the existence of a potential hernia which he explained in these words:
"What I mean by that is that this represents a lack of full development in this area and a hernia could become manifest."
During September and October of 1954, plaintiff was examined for the existence of a hernia by Dr. Irving Joseph Wolff of Monroe, Louisiana, on three different occasions with a finding of a left inguinal indirect hernia of a moderate degree. He testified that the bulge had protruded down into the ring the size of which was about that of one joint of the index finger. He was of the opinion that it would be dangerous for plaintiff to work at manual labor because of possibility of strangulation.
Dr. C. H. Hill of Monroe, Louisiana, testified that upon an examination made of plaintiff approximately a year following the accident, he found a small indirect left inguinal hernia which the patient's history indicated was due to trauma. He stated that plaintiff was still wearing a support at the time of the examination. His findings revealed a small bulging and an opening deep enough to permit strangulation. It was his opinion that plaintiff should perform *168 no work without wearing a proper truss, and if he did so it would be dangerous because of liability of strangulation.
A final examination of Williams was made by Dr. A. D. Tisdale of Monroe, Louisiana, on January 30, 1955. Dr. Tisdale testified that his examination disclosed that the left inguinal ring was three times as large as the right, that he could insert his index finger through the scrotum, and that upon the patient coughing he felt a considerable lump or bulge in the left ring. It was his opinion that heavy manual labor would be dangerous.
The only lay testimony offered to support the medical evidence in his behalf, was the testimony of Calvin Williams himself, who stated that as of the date of trial he still experienced symptoms of pain in the left inguinal region upon doing straining work and at times he gets dizzy and his stomach is upset. He stated that he has done no heavy work since the accident of October 14, 1953, and has not tried to do so.
It is noted that as to number, the medical witnesses testifying on behalf of plaintiff and on behalf of defendants are equal, that is to say, four on one side and four on the other. It has often been stated in appellate decisions that where there is conflict in expert medical testimony the court is not bound by the number of opinions on the one side or the other any more than it is bound by the number of lay witnesses who have testified to a controverted issue in the case. When such a problem is presented it is the duty of the court to arrive at the actual truth of the question involved whether the disputed fact is sought to be proved by medical or lay testimony, and the same rules apply in either case insofar as the interest or want of interest of the witness, his opportunity for observation and his incentive for testifying are concerned. Johnson v. Hillyer, Deutsch, Edwards, Inc., La.App.1939, 185 So. 652.
After a careful analysis of the testimony it is our opinion that the evidence as a whole preponderates in favor of plaintiff. It is not disputed that Williams suffered an injury which caused tenderness in the region of the left inguinal ring and this injury resulted in treatment which appears to have been broken off by the doctors designated by the employer when they suggested operative procedure to plaintiff. Although the doctors sought to explain this unusual procedure, stating that it was intended as a test of the sincerity of plaintiff's complaints, no doubt it did frighten plaintiff into not returning for additional treatment. Neither Dr. Black nor Dr. McKeithen indicated in their testimony that they had discharged plaintiff when they suggested an operation. The record does not show the formal tender of an operation by appellees and certainly the desire to have plaintiff submit to an operation is contrary to the explanation given by Drs. Black and McKeithen. In his reasons for judgment the learned trial judge, for whose opinions we have the utmost respect, gave the following reasons for terminating plaintiff's compensation at the end of a ten week period:
"On the other hand, if he had chosen to correct his disability by undergoing an operation, which we have reason to believe would have been a very simple one, then the court would have provided that his operation be paid for and a reasonable amount of compensation provided for his period of recovery. As it is, the plaintiff has seemingly taken the position of just sitting down and waiting to get compensation."
We do not agree with the reasoning of the judge, especially since there is no evidence in the record that appellees tendered such an operation. But had such an operation been tendered, plaintiff's legal position would have been sound, we believe, had he refused to submit to such an operation. This issue was resolved by this court in Johnson v. United States Fidelity & Guaranty Co. of Baltimore, La.App. 1952, 58 So. 2d 261.
The essential fact to be determined in the instant case is whether plaintiff is disabled from pursuing his employment and whether disability has persisted through the date of his trial. Some of the examining *169 physicians differed in their findings as to whether the accident resulted in a potential hernia or whether it was complete or an incomplete hernia. It is not incumbent upon plaintiff in a workmen's compensation suit to demonstrate exactly the disability which prevents him from performing his work. It is only necessary that he show the accident has resulted in some condition which incapacitates him from doing his work.
The jurisprudence is well settled that in order to be entitled to workmen's compensation, the worker is not expected to work in pain or when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. The rule was recently so stated in Brannon v. Zurich General Accident & Liability Ins. Co., 1953, 224 La. 161, 69 So.2d 1, 3:
"In the light of the facts in the instant case the plaintiff is, in our opinion, permanently and totally disabled within the meaning and contemplation of this law. The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. See, Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App., 16 So.2d 679; Brown v. Furr, La.App., 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La. App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La. App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Anders v. Employers Liability Assurance Corp., La.App., 50 So.2d 87; Stansbury v. National Auto & Cas. Ins. Co., La.App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La. App., 51 So.2d 393. See, also, the additional authorities cited and discussed by Malone in his work on the Louisiana Workmen's Compensation Law and Practice, Sections 272-275."
Counsel for appellees in brief invite our attention to the following authorities which it is argued, support the conclusions reached by the District Court: Gentry v. Gulf Public Service Co., La.App.1943, 11 So.2d 717; Davis v. Swift & Co., La.App.1953, 68 So. 2d 670; Higgs v. Monroe, La.App.1955, 77 So.2d 555; Richardson v. Tunica Hardwood Co., La.App.1955, 81 So.2d 470.
After reviewing these citations we do not consider them controlling in the instant case. Gentry v. Gulf Public Service Co. and Davis v. Swift & Co., involve principally the question of whether or not there was causal relationship between the alleged accident and plaintiff's alleged disability. Richardson v. Tunica Hardwood Co. et al., involved a case where a great preponderance of the evidence was unquestionably in favor of the defendant, and to the effect that plaintiff was not suffering the disability claimed. Higgs v. Monroe presented a decision by this court which held that plaintiff had failed to establish his disability resulted from an inguinal hernia. We think unquestionably the medical evidence in the cited case preponderated in favor of defendants. Therein four doctors testified as to the nonexistence of the disability as against one testifying as to its existence. Another serious question raised in the Higgs case was the occurrence of the accident. In the instant case there is no question concerning plaintiff having sustained an injury within the concept of the workmen's compensation statute.
Penalties as provided under LSA-R.S. 22:658 which require payment of losses within sixty days after receipt of proof, of 12% damages and attorney's fees, although claimed by plaintiff in his petition, are not seriously urged before this court. This *170 claim, in our opinion, has little merit forasmuch as we are convinced the defense in this case is a serious one and has been made with good cause.
It follows from our findings of fact and law as reported hereinabove, that plaintiff is entitled to compensation during disability not to exceed 400 weeks, and that accordingly the judgment from which appealed is hereby amended in accordance with our holding, and as so amended, it is hereby affirmed. The defendants are cast for costs.