GLADNEY, Judge.
This suit was instituted by Leo G. Bras-well for the purpose of recovering compen *533 sation for permanent and total disability under the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq. Judgment was rendered by the trial court as prayed for, and defendant insurer has appealed.
Plaintiff, a thirty-seven year old employee of Jett Drilling Company, on February 23, 1958, while performing the duties of a roughneck, a member of an oil well crew drilling in Tensas Parish, was injured when struck by the back tongs as pipe was being pulled out of the well and being broken for placement on the pipe rack. The employee received a blow which knocked him against the draw works and mud basket, and as a result he received disabling injuries to his head, neck, spine and shoulder. It is further alleged he suffered a concussion and was unconscious for a short period of time. About an hour later he returned to his job and worked until February 26th, when he reported to Dr. P. E. Benoist, a general practitioner, of Natchez, Mississippi. On March 21st Dr. Benoist referred Braswell to Dr. Jack H. Phillips, an orthopedist of- Natchez, who administered treatment until May 30th. On May 21st Dr. Phillips referred the patient to Dr. Walter Neill, a neurologist of Jackson, Mississippi, and thereafter Dr. Neill received professional visits from plaintiff on June 16, August 18 and October 24, 1958. Dr. Neill again saw Braswell on January 13, 1960, but the examination was for evaluation of disability, if any. This suit was instituted on August 3, 1959, and on October 5 and November 11, 1959, plaintiff was observed by Drs. H. T. Posey and Jose L. Garcia Oiler, both neurologists of New Orleans, Louisiana, for evaluation purposes.
Compensation was paid from date of injury until August 24, 1958, at which time payments were discontinued on the advice of Dr. Neill, who reported plaintiff was able to resume his work. Braswell returned and worked as a roughneck for Jett Drilling Company on September 3rd and 4th, during the absence of a regular member of the crew. Thereafter he did no further work during 1958 for this employer.
Braswell worked for D. R. Franks Casing Crew between September 5, 1958, and January 1, 1959. Plaintiff furnished no exact information as to how much work he performed with the casing crew during this period and in his testimony was evasive both as to earnings and the number of days he was so employed. Braswell’s withholding tax statement disclosed he earned during said period $1,252.17 while working with the D. R. Franks Casing Crew. This seems to indicate that he was gainfully employed for three months, more or less, from September 1st to December 1st of 1958. He again began working for Jett Drilling Company on January 13, 1959, and worked all but seven days between January 13 and May 20, 1959, working seven eight-hour days per week, and some overtime. On May 20th he voluntarily discontinued his employment with this employer. After leaving Jett, the only evidence of plaintiff’s employment prior to'the date of trial is his testimony that he worked seventeen days as a roughneck for Vasser and Brown, thirteen days as a roughneck for the Riley Drilling Company and worked off and on for D. R. Franks Casing Company.
The testimony of Dr. Benoist was not taken and we have no information as to his findings concerning the injuries received by plaintiff on February 23rd. The examination by Dr. Phillips on March 21st disclosed no evidence of bone or joint injury and he was of the opinion that plaintiff had sustained a sprain of the ligaments in his neck. He prescribed traction and a Thomas collar. The doctor testified that when the patient continued his complaints with no objective symptoms indicated, he requested that he see Dr. Neill. The latter saw plaintiff on May 21st, at which time Braswell complained of pains in the right side and back of his neck accompanied by headaches. He told the doctor that previously he experienced pain beneath or behind his eyes and numbness in the back of his head, but those conditions had cleared considerably. As a result of the examination, Dr. Neill opined there was some stiffness in the *534 muscles of the neck and hypalgesia of the nerve root of the second cranial nerve which supplied the top and back of the head, which latter condition, he said, was not significant. On June 16th the employee indicated substantial improvement and on August 18th Braswell advised the doctor his headaches had been completely relieved and the muscle stiffness in his neck and shoulder had improved to the extent that recurrences were only intermittent. He requested permission of Dr. Neill to return to work. Dr. Neill was then of the opinion that plaintiff could resume his work satisfactorily, but possibly with some “difficulty” from some “fullness in the neck muscles”. On the visit to Dr. Neill on October 24, 1958, the employee reported he was tolerating his work in a satisfactory manner. After this visit to the doctor a year elapsed before the employee sought further medical advice or treatment.
The visitations to Drs. Posey and Oiler in New Orleans on October 5 and November 4, 1959, and to Dr. Neill on January 13, 1960, were for purposes of evaluation and not for treatment.
Dr. Posey examined plaintiff on November 4, 1959, although he went to the doctor’s office on October 5th when a technician gave an electro encephalogram, which test was negative. On that occasion the doctor was not present. On November 4th Dr. Posey administered a neurological and mental status examination for psychoneurosis, which was negative. He concluded the employee was permanently and totally disabled, based on his opinion that plaintiff had sustained some organic disability involving his neck and right shoulder girdle as a result of a whiplash injury. He testified employment as a roughneck would cause pain and discomfort which would be disabling should he endeavor to work for a sustained period, and constant work would aggravate the condition. The examination disclosed only subjective symptoms and his opinions were formed from statements and work history given to him by plaintiff. Dr. Posey testified Braswell told him that he had tried to return to work, but found he could work only off and on because of shoulder and neck pain, but Braswell said his condition was better then than it was in January and February of 1959, when he was working for Jett Drilling Company.
Dr. Oiler reported his findings revealed a flexed posture of the neck with spasm of the right side muscles from the shoulder to the base of the skull. He concluded from these findings and the symptoms as related to him that plaintiff was totally and permanently disabled from performing the duties of his employment as a roughneck. This doctor found no limitation in the movement of the neck, but believed that plaintiff experienced pain and he observed that there was atrophy of the soft tissues of the right eye. There was no finding of neuropsychiatric disturbance. Dr. Oiler also testified plaintiff told him he had worked a few weeks at a time, totaling perhaps three months of the year prior to the examination. The doctor understood this to imply that since the accident plaintiff had worked only spasmodically with no continuous or sustained employment.
Dr. Neill, following his examinations of August 18, October 24, 1958, and of January 13, 1960, was of the opinion that plaintiff was not disabled and was fully capable of performing the duties of his employment without discomfort or pain after the examination of August 18, 1958.
Predicated largely upon the testimony of Drs. Posey and Oiler, the trial judge reached the conclusion that plaintiff was totally and permanently disabled and rendered judgment accordingly. The appellant insurer complains to this court that the judgment is in error in several respects, namely: that it failed to impose upon plaintiff the burden of proof required by law; it failed to accord Dr. Neill’s testimony sufficient weight; it held that employment as a roughneck and as a member of a casing crew were dissimilar; and, alternatively, that if plaintiff is held to be dis *535 abled, lie should be held to be only partially and not totally disabled. As an authority supporting his decision, the judge a quo cited the case of Sykes v. Stout Drilling Company, Inc., La.App., 124 So.2d 200 (2d Cir.1960).
No authorities are required for the often reiterated principle that the burden of proof in a workmen’s compensation suit rests upon the plaintiff to establish his case to a legal certainty, and mere conjecture, possibility, or even unsupported probability are not sufficient to sustain this burden. Also well established is the legal principle that the testimony of the attending physician, particularly if he is a specialist, is entitled to greater weight than that of any doctor, who examined only for the purpose of testifying. Walker v. Monroe, et al, La.App., 62 So.2d 676 (2d Cir.1953); Roy v. Guillot, La.App., 84 So.2d 469 (2d Cir.1955); Richmond v. New Amsterdam Casualty Company, La.App., 85 So.2d 717 (1956); Anderson v. Peek, La.App., 102 So.2d 776 (2d Cir.1958); Cotton v. Hartlord Accident & Indemnity Company, La.App., 116 So.2d 736 (2d Cir.1959); and Ruffin v. Travelers Insurance Company, La.App., 120 So.2d 532 (1st Cir.1960).
The holding in Sykes v. Stout Drilling Company is in line with the decision of the Supreme Court in Brannon v. Zurich General Accident & Liability Insurance Company et al, 224 La. 161, 69 So.2d 1, 3 (1953), wherein, with Justice Fournet as its organ, the following pronouncement was made with reference to a determination of total disability:
"There is, of course, no hard and fast rule that can be laid down for guidance in the application of this rule to the limitless variations of fact presented to the courts. Each case must stand on its own peculiar facts. As was pointed out in the Wright case [Wright v. National Surety Corporation] (221 La. 486, 59 So.2d [695] 697), ‘The question here, as in all these cases, is whether plaintiff is “disabled to do work of any reasonable character” within the intendment of the compensation statute.’
“In the light of the facts in the instant case the plaintiff is, in our opinion, permanently and totally disabled within the meaning and contemplation of this law. The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own-health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. See, Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App., 16 So.2d 679; Brown v. Furr, La.App, 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La.App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La.App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Anders v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; Stansbury v. National Auto & Cas. Ins. Co., La.App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La.App., 51 So.2d 393. See, also, the additional authorities cited and discussed by Malone in his work on the Louisiana Workmen’s Compensation Law and Practice, Sections 272-275.”
We are of the opinion the ruling in Sykes v. Stout Drilling Company does not control our holding in the instant case. Sykes, an oil driller’s helper or roughneck, suffered a serious and permanent impairment of the vision of his right eye, concerning which the medical experts disagreed *536 as to its extent and effect. The court determined that to require the employee to pursue the same duties with impaired vision would be hazardous to himself and members of his crew. One doctor estimated the loss of vision as 41-42 per cent, and another at 20 per cent. The evidence herein does not indicate that Braswell’s employment subsequent to the injury was dangerous to himself and his co-workers. Nor is there substantial evidence of complaints by the employee to other employees of pain or disability, although Braswell worked regularly from September 1, 1958, to May 20, 1959. For more than a year after August 24, 1958, he did not seek medical attention. Those are circumstances which may not be ignored and forasmuch as they are established facts a conclusion that the employee was totally and permanently disabled within the intendment of the Workmen’s Compensation Act is not warranted.
Accordingly, for the reasons hereinabove set'forth the judgment from which appealed is annulled, reversed and set aside, and plaintiff’s demands are rejected at his cost.